UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DWIGHT P. FOSTER, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-02-S-1514-NE |
| BIG LOTS, INC., f/k/a CONSOLIDATED STORES CORP., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff, Dwight P. Foster, an African American male, claims that his former employer, Big Lots, Inc., discriminated against him and terminated his employment because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The action now is before the court on defendant's motion for summary judgment (doc. no. 22), as well as its amended motion for leave to file a reply brief (doc. no. 27).

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

In making this determination, the court must review all evidence and make all

reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that defendant's motion for summary judgment should be granted in part and denied in part. Defendant's amended motion for leave to file a reply brief will be denied as moot.

## I. SUMMARY OF FACTS

**A.    Plaintiff's Job Duties and Hours**

Plaintiff was first employed by defendant in August of 1997, to a position described as "cashier/recovery."[1] On his job application, plaintiff indicated that there were no days or times of days that he would be unable to work.[2] Plaintiff's initial job duties involved operating a cash register, cleaning, and restocking merchandise.[3] About two weeks after he was hired, however, plaintiff's job duties were changed; thereafter, he performed only janitorial duties, such as sweeping and mopping floors, and collecting shopping carts.[4] Plaintiff worked between two and three hours

---

[1] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at Exhibit 8 (Foster EEOC charge). Plaintiff's only prior work experience had been a "light construction" job in the summer of 1988, as well as a one-day-a-week custodial/maintenance position at the North Alabama Skills Center. Plaintiff worked in that capacity for six years before being hired by defendant. *Id.* at Exhibit 6 (Foster job application).

[2] *Id.* at Exhibit 6 (Foster job application).

[3] *Id.*, Tab 2 (Foster deposition), at 409.

[4] *Id.* at 410-11.

a night, seven nights a week, when performing such duties.[5] Plaintiff was so employed for the next three and one-half years, until his employment was terminated in April of 2001.[6]

Plaintiff never mentioned that he believed his job duties and hours of work were assigned in a racially discriminatory manner. Instead, plaintiff claims that he complained generally about his job duties and hours at some point, but he could not recall when, or to whom, he voiced such complaints — other than speculating that he may have generally complained about performing janitorial duties to assistant manager Doris Lovell, on one occasion.[7]

Further, plaintiff never lodged any specific complaint regarding his hours of work. He requested to take off the evening of July 4, 2000, but the request was denied because it was submitted only one day before, and the store always was "real busy" during the July 4th holiday.[8] Despite management's denial of his request, plaintiff did not report to work on July 4, 2000, and he later was reprimanded for the unauthorized absence and insubordination.[9] Plaintiff recalled making two other requests for evenings off, but neither of those requests requested a particular evening off — they simply requested time off in general.[10]

## B.     Incidents of Perceived Harassment in the Workplace

Most of the harassment that plaintiff complains of occurred during several altercations with a Caucasian co-worker named Martha Gallant. Defendant acknowledges that Gallant "can be an annoying person," but asserts that none of her behavior was motivated by a racial animus.[11]  In

---

[5] *Id.* at 212.

[6] *Id.* at 411-12.

[7] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 412-16.

[8] *Id.* at 204; Exhibit 13 (Foster Progressive Counseling form dated July 7, 2000).

[9] *Id.* at Exhibit 13.

[10] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 202-03.

[11] Defendant's brief in support of summary judgment, at 10-11.

support of that argument, defendant points to that portion of plaintiff's deposition testimony in which he volunteered that Gallant similarly harassed a Caucasian employee named Jessica Lovell.[12] Notwithstanding, plaintiff characterizes the following events as actionable racial harassment.

In June of 2000, Gallant told plaintiff that he did not "belong here."[13] Plaintiff did not know what Gallant meant by the statement, but he felt insulted.[14] He did not say anything to Gallant but, instead, continued to work.[15] He also failed to complain to management.[16]

In October of 2000, plaintiff overheard Gallant tell another employee that plaintiff looked like a stuffed dog in the toy department.[17] Plaintiff speculated that Gallant was referring to a stuffed dog made from darkly-shaded materials.[18] Although plaintiff was offended by the statement, he did not confront Gallant.[19] Plaintiff later reported this incident to assistant manager Sharon Fennell. After hearing plaintiff's story, she sighed, shrugged her shoulders, and told plaintiff to tell Gallant to leave him alone. Plaintiff declined to follow Fennell's instruction because he believed that, as an assistant manager, it was Fennell's job to deal with Gallant.[20]

In January of 2001, plaintiff tripped while walking down an aisle in the store. Gallant observed plaintiff's spill and remarked that he must be intoxicated, and added that she would tell the manager to fire him.[21] Plaintiff does not know whether Gallant actually did so.[22] Again,

---

[12] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 179-80.
[13] *Id.* at 56.
[14] *Id.* at 62-63.
[15] *Id.* at 63-64.
[16] *Id.* at 65.
[17] *Id.* at 66-67.
[18] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 68.
[19] *Id.* at 69.
[20] *Id.* at 71-72.
[21] *Id.* at 56.
[22] *Id.* at 87.

although he was offended, plaintiff did not report the incident to management.[23]

On several unspecified occasions, Gallant said that plaintiff was "stupid" for wearing a heavy raincoat during the summer.[24] Plaintiff was offended and embarrassed by the statements, but he did not confront Gallant or immediately report the incidents to management.[25] At some unspecified point, plaintiff reported Gallant's comments to assistant manager Doris Lovell, who told plaintiff that she would handle the situation.[26] Plaintiff claims that Gallant continued to harass him,[27] but he did not lodge any further complaints about Gallant calling him "stupid."[28]

Plaintiff also complains that Gallant followed him around the store on unspecified dates.[29]

On another unspecified occasion, co-employees Carrie Anyan and Amanda Fennell teased plaintiff — asking him when he was going to take Gallant out on a date, and whether he liked Gallant.[30] Plaintiff was annoyed and embarrassed by the teasing, but did not confront either employee. Plaintiff later reported the incident to Lovell, who again stated that she would take care of it.[31] Apparently she did, because Anyan and Fennell did not again tease plaintiff.[32]

On several unspecified occasions, Gallant said to plaintiff, "[h]ey, boy, come help me with

---

[23] *Id.* at 87-88.

[24] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 57.

[25] *Id.* at 93-94.

[26] *Id.* at 99-100.

[27] *Id.* at 101-03.

[28] *Id.* at 99, 103-04.

[29] *Id.* at 103.

[30] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 104-05. Nepotism was prevalent at the Athens store. For example, former employee Amanda Fennell is assistant manager Sharon Fennell's daughter and, former employee Jessica Lovell is former assistant manager Doris Lovell's daughter. *Id.*, Tab 3, Exhibit D (Fennell deposition), at 27-28.

[31] *Id.*, Tab 2 (Foster deposition), at 109-10.

[32] *Id.* at 114.

this," or some variant of that statement.[33] Although plaintiff subjectively considered it offensive to be referred to as a "boy," he admittedly never confronted Gallant or complained about the remarks to management.[34]

Plaintiff also claims that he was locked out of staff meetings at least once, and possibly twice, in February of 2001.[35] It was store manager Pam Davis's practice to lock the doors five to ten minutes after a staff meeting was scheduled to begin.[36] Since no employee was assigned to watch for late-comers, any employee arriving after the doors were locked would be unable to attend the staff meeting.[37] Plaintiff did not provide any clear testimony that he complained to management about these incidents.[38]

On another unspecified occasion, co-employee Carrie Anyan punched plaintiff on the arm.[39] The blow did not cause pain or leave a bruise. Plaintiff does not know why Anyan punched him. He did not say anything to Anyan, nor did he report the incident to management.[40]

Plaintiff also complains that he was unfairly "written up" by assistant manager Sharon Fennell for missing work on April 8, 2001 (about one month prior to plaintiff's termination).[41] He points to the fact that his time card indicates that he was present for work on that day.[42] Upon being confronted with the time card at deposition, Sharon Fennell said that she "may have had [the] date

---

[33] *Id.* at 153-54.

[34] *Id.* at 154, 174.

[35] *Id.* at 390-91.

[36] Defendant's evidentiary submissions, Tab 4, Exhibit B (Davis declaration) ¶ 12.

[37] *Id.*

[38] *Id.*, Tab 2 (Foster deposition), at 393.

[39] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 195.

[40] *Id.* at 197-200.

[41] Plaintiff's brief opposing summary judgment, at 6-7; defendant's evidentiary submissions, Tab 3, Exhibit D (Fennell deposition), at Exhibit 6 (Foster Progressive Counseling form dated April 8, 2001).

[42] Defendant's evidentiary submissions, Tab 3, Exhibit D (Fennell deposition), at 63.

wrong then."[43] In fact, plaintiff was absent from work on April 9, 2001.[44] Plaintiff adds that he was the only employee "written up" by Sharon Fennell during her approximately five-year-tenure with defendant.[45]

To summarize, plaintiff complained to management about alleged harassment on three occasions: (1) when Gallant told him that he looked like a dog in the toy department; (2) when Gallant said he was "stupid" for wearing a heavy raincoat during the summer; and (3) when Anyan and Fennell teased him. He did not mention race in any of those complaints.[46]

C.     **Events Leading to Plaintiff's Termination**

While plaintiff and Gallant were closing the store on the night of May 6, 2001, plaintiff turned the lights off in the section of the store in which Gallant was located.[47] Gallant told him that his behavior was "irksome."[48] Gallant then said "I'm claustrophobic. I should kick you."[49] Plaintiff gestured for Gallant to kick him and Gallant responded by saying "I kicked Thomas" and kicking plaintiff on the leg.[50] Plaintiff states that the kick neither caused him pain nor left a bruise.[51] Despite his inviting gesture and the apparently trivial nature of the kick, plaintiff reacted by shoving Gallant

---

[43] *Id.*

[44] *Id.* at plaintiff's exhibit 9 (Foster time card for the week ending April 14, 2001).

[45] *Id.* at 44.

[46] While discussing plaintiff's complaints of harassment at his deposition, plaintiff was asked "[w]ell, did you or did you not make it a black and white issue when you voiced these complaints?" Plaintiff responded by stating "I don't remember making it a black and white issue." Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 178.

[47] *Id.*, Tab 3, Exhibit B (Gallant deposition), at 18-20.

[48] *Id.* at 20.

[49] *Id.*, Tab 2 (Foster deposition), at 296.

[50] *Id.* at 297-98. "Thomas" is a store employee with whom Gallant frequently engaged in horseplay. Gallant's "kicking" episodes were apparently a kind of running joke that some employees participated in. *Id.*, Tab 3, Exhibit B (Gallant deposition), at 23.

[51] *Id.*, Tab 2 (Foster deposition), at 122.

into a pallet of plant stands, causing her to fall.[52] Gallant claims that she was frightened by the incident.[53] Plaintiff did not wait to see whether Gallant was injured but, instead, walked to the front of the store to leave.[54] No one spoke with plaintiff regarding the incident that evening.[55]

Assistant manager Sharon Fennell witnessed the incident, and after plaintiff left, she asked Gallant to come to the office and write a report.[56] Gallant agreed to give the report, but asked Fennell to write it for her because she was still upset and shaking from the incident.[57] Fennell prepared the report and had Gallant sign it either that night or the next morning.[58] The report was then sent to defendant's corporate office.[59] Fennell and Gallant's version of what occurred differs from plaintiff's in that they both claim that Gallant did not actually kick plaintiff.[60]

The next morning, Fennell telephoned store manager Pam Davis, who was at home on vacation leave, and requested instructions on how to handle the incident. Davis instructed Fennell to telephone district manager Bruno Lijoi. In turn, Lijoi referred Fennell to Human Resources Manager Rick Saenz.[61] Fennell telephoned Saenz at his Orlando, Florida office and recounted the incident.[62] Saenz asked Fennell to read him the written statement regarding the incident, which

---

[52] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 130-32; Tab 3, Exhibit B (Gallant deposition), at 20.

[53] *Id.* at 21-22.

[54] *Id.*, Tab 2 (Foster deposition), at 133, 137.

[55] *Id.* at 138.

[56] *Id.*, Tab 3, Exhibit B (Gallant deposition), at 21.

[57] *Id.* at 21-22.

[58] Defendant's evidentiary submissions, Tab 3 Exhibit B (Gallant deposition), at 21-22; Exhibit D (Fennell deposition), at 21-22. Gallant and Fennell's deposition testimony contradict one another in that Gallant states that she signed the statement the night of the altercation, and Fennell asserts that the statement was signed the next day or so.

[59] *Id.*, Exhibit D (Fennell deposition), at 23.

[60] *Id.* at 18; Exhibit B (Gallant deposition), at 20, 22.

[61] *Id.*, Exhibit D (Fennell deposition), at 19.

[62] *Id.*, Exhibit A (Saenz deposition), at 8-11.

Fennell did.[63] Plaintiff's race was not mentioned, nor was Saenz told of any misconduct on the part of Gallant.[64] Based on the information that he was provided, Saenz instructed Fennell to terminate plaintiff's employment.[65] Plaintiff disputes that Saenz was the decisionmaker regarding plaintiff's termination, and argues that Fennell unilaterally terminated plaintiff's employment before receiving permission from Saenz.[66]

When plaintiff reported to work the following day, Fennell met with plaintiff and terminated his employment. Plaintiff was presented with a document indicating that he was being terminated for pushing Gallant, and was asked to sign it. Plaintiff did not make any comments or sign the termination document.[67]

### D.     Plaintiff's Replacement

A Caucasian female was hired to perform plaintiff's duties. Eventually, that individual began to perform non-janitorial duties, and tasks previously performed by plaintiff were shared among several employees.[68]

### E.     Plaintiff's EEOC Charge

Plaintiff wrote a letter to the Equal Employment Opportunity Commission ("EEOC") on October 24, 2001, complaining of race and sex discrimination.[69] Plaintiff filed a formal EEOC charge on December 12, 2001.[70] When the EEOC asked defendant to respond to plaintiff's charge,

---

[63] *Id.*

[64] Defendant's evidentiary submissions, Tab 3, Exhibit A (Saenz deposition), at 12.

[65] *Id.* at 7-8.

[66] Plaintiff's brief opposing summary judgment, at 1-2. Plaintiff's brief states that "[t]he position and contention of defendant that plaintiff was terminated from his employment following a decision by Rick Saenz, the Regional Human Resources Manager, is a total fabrication and falsehood." *Id.* at 1.

[67] Defendant's evidentiary submissions, Tab 2 (Foster deposition), at 359-60.

[68] *Id.*, Tab 3, Exhibit B (Gallant deposition), at 15, 41-42.

[69] *Id.*, Tab 2 (Foster deposition), at Exhibit 10 (Foster letter dated Oct. 24, 2001).

[70] *Id.* at Exhibit 9 (Foster EEOC charge).

Human Resources Manager Rick Saenz discovered that the corporate office did not have a copy of the written statement detailing the incident leading to plaintiff's termination. Saenz then called the Athens store and asked for a copy of the written statement.[71] Fennell had not retained a copy of the original statement, and she and Gallant wrote and signed new statements.[72] The EEOC issued plaintiff a right-to-sue letter on March 27, 2002, and this action commenced soon thereafter.[73]

## II. DISCUSSION

The complaint alleges a single claim, race discrimination under Title VII and § 1981. Plaintiff asserts that he was "subjected to race discrimination during his employment by defendant and in the course of the termination of his employment by defendant," and that "similarly situated white (non-black) employees were treated differently and more favorably than was plaintiff because of his race."[74] Plaintiff's brief opposing summary judgment outlines the substance of his claims with *somewhat* more specificity, stating that "plaintiff's claim of race discrimination includes allegations of discrimination in the plaintiff's terms and conditions of employment, a hostile work environment, and an unlawful discharge."[75] Accordingly, plaintiff's claim will be analyzed under the three subparts that he has identified.

### A. Racially-Discriminatory Terms and Conditions of Employment

#### 1. Job duties and hours

---

[71] *Id.*, Tab 3, Exhibit A (Saenz deposition), at 13.

[72] *Id.*, Exhibit D (Fennell deposition), at 54-55; Exhibit B (Gallant deposition), at 23.

[73] Defendant's evidentiary submissions, Tab 3, Exhibit B (Gallant deposition), at 23; Tab 2 (Foster deposition), at Exhibits 15 (Right-to-sue letter) and 16 (Dismissal and notice of rights form).

[74] Complaint ¶¶ 21-24.

[75] Plaintiff's brief opposing summary judgment, at 7. Plaintiff neglected to organize the argument section of his brief with any subheadings identifying which portions of his argument support which claim(s), or even what exactly plaintiff's claims are, for that matter. *See id.* at 7-15. Such a lack of specificity and organization in a party's brief makes the court's task of evaluating the merit of a summary judgment motion significantly more difficult.

It is undisputed that, beginning about two weeks after he was hired by defendant in August of 1997, plaintiff was the only "cashier/recovery" who was assigned to exclusively perform janitorial work for a few hours a night, seven nights a week. Plaintiff claims that his assignment was racially-discriminatory. Whatever the substantive merit of that contention, summary judgment nevertheless is due to be granted, because the claim is not timely.

Title VII requires that a charge of discrimination be submitted to the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge."); *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1387 (11th Cir. 1982) ("In order to assert a claim of racial discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred."). While there are no administrative prerequisites to the maintenance of a § 1981 claim, plaintiff still must file suit within the applicable statute of limitations. Unlike Title VII, § 1981 does not contain an express statute of limitations. As a result, the Supreme Court instructs district courts to "select the most appropriate or analogous state statute of limitations" from the state in which the allegedly discriminatory act occurred. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-61, 107 S. Ct. 2617, 2620, 2621, 96 L. Ed. 2d 572 (1987); *see also Wilson v. Garcia*, 471 U.S. 261, 266-68, 105 S. Ct. 1938, 1941-43, 85 L. Ed. 2d 254 (1985). In Alabama, that limitations period is two years. *See Peterson v. BMI Refractories*, 132 F.3d 1405, 1414 n.16 (11th Cir. 1998) (holding that § 1981 intentional discrimination claims arising out of acts occurring in Alabama are governed by Alabama Code § 6-2-38(l) (1975), the state's general, two-year limitations period applicable to personal injury

actions); *see also Goodman*, 482 U.S. at 661-64, 107 S. Ct. at 2620-22 (holding that the court of appeals correctly applied Pennsylvania's two year statute of limitations for personal injury actions to § 1981 claims).

Plaintiff's discrimination claim regarding his work hours and assignments accrued, and the statutory clock began to run, when he was first assigned to work in the manner that he now asserts is discriminatory. He was aware of the alleged undesirability of his working hours and duties from the outset, as evidenced by his infrequent complaints to management about those matters. *See, e.g., Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1390 (11th Cir. 1982) ("The limitations period for § 1981 employment discrimination cases 'commences when the plaintiff knows or reasonably should know that the discriminatory act has occurred, the same point from which the Title VII 180-day limitations period runs.'") (quoting *McWilliams v. Escambia County School Board*, 658 F.2d 326, 330 (5th Cir., Unit B 1981)[76]); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) (holding that a plaintiff's § 1981 racially hostile work environment claim was governed by Georgia's two-year statute of limitations for personal injury actions, and that the statute began to run "when the plaintiff-employee knew or reasonably should have known that the discriminatory act occurred."). Here, plaintiff failed to file an EEOC charge and this action until *over four years after* he initially was assigned to perform janitorial duties seven nights a week. Accordingly, his claim is untimely, under either Title VII or § 1981.

2.     **Plaintiff was "written up" for missing work on one occasion.**

Plaintiff claims that he was unfairly "written up" by assistant manager Sharon Fennell for missing work one day in April of 2001. Whatever Fennell's motivation, plaintiff cannot base a

---

[76] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

federal claim on that action, because it did not constitute an "adverse" employment action.

In order to make out a case of discriminatory discipline under Title VII, plaintiff must show that he has suffered an adverse employment action. *See Hudson v. Norfolk Southern Railway Co.*, 209 F. Supp. 2d 1301, 1334 (N.D. Ga. 2001). An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id.* (citing *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)). "Although adverse employment actions may include reprimands . . . the action in question must have more than a tangential effect on the ultimate employment decision . . . . Indeed, the conduct in question must rise to a substantial level before it can be cognizable as unlawful discrimination." *Hanley v. Sports Authority*, 143 F. Supp. 2d 1351, 1356 (S.D. Fla. 2000) (discussing a racially-disparate treatment claim) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998); *Mattern v. Eastman Kodak*, 104 F.3d 702, 708 (5th Cir. 1997); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)); *see Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) (holding that unfair reprimands or negative performance evaluations of employee, unaccompanied by some tangible job consequence, do not constitute adverse employment actions); *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (holding that, even though "each oral or written reprimand brought [plaintiff] closer to termination," they still did not form an independent basis for liability under Title VII because, "absent some tangible job consequence accompanying the reprimands, we decline to broaden the definition of adverse employment action to include them") (citations omitted). Here, plaintiff has failed to identify any consequence related to the reprimand that he received and, thus,

it cannot reasonably be construed as an adverse employment action. Summary judgment is due to be granted on this portion of plaintiff's race discrimination claim.

**B.    Racially-Hostile Work Environment**

While asserting a claim for a racially-hostile working environment, plaintiff's brief does not provide *any* argument in support of that claim. Accordingly, that claim is deemed to have been abandoned, and summary judgment will granted. *See, e.g., Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned).

Even overlooking plaintiff's failure to argue his hostile work environment claim, it is readily apparent from the facts that the "harassment" suffered by plaintiff falls far short of the kind required to establish a cognizable racially-hostile work environment claim. A plaintiff must demonstrate five elements to establish a prima facie racially-hostile work-environment case: *i.e.*, (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon the employee's race; (4) the harassment complained of was sufficiently severe or pervasive as to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is liable for the environment under a theory of either direct or vicarious liability. *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994). Plaintiff has failed to demonstrate that *any* of the petty harassment that he suffered was

based upon his race, or that such harassment was sufficiently severe or pervasive to affect his employment in any detectable manner. At most, plaintiff has shown that he suffered some fairly typical, race-neutral, workplace tribulations.

## C.     Racially-Discriminatory Termination

Plaintiff claims that defendant's failure to punish Gallant for "horseplay," while terminating his employment for pushing Gallant into a pallet of merchandise, was racially discriminatory.[77] Plaintiff does not argue that he has direct evidence of a racially-discriminatory animus. The court accordingly will evaluate this claim under the analytical framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Under that now familiar framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also Burdine*, 450 U.S. at 253-54 & n.6, 101 S. Ct. at 1093-94 & n.6. "The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094). To rebut the presumption of intentional discrimination raised by a plaintiff's demonstration of a prima facie case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]." *Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094. If a

---

[77] Plaintiff's brief opposing summary judgment, at 9-10.

defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [a] discriminatory animus," *Burdine*, 450 U.S at 257, 101 S. Ct. at 1096, the presumption of discrimination created by the prima facie case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10, 101 S. Ct. at 1094-95 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). If a plaintiff does so, then he or she "is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106.

In the Eleventh Circuit, "a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and 'that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'" *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.

1984) (quoting *Davin v. Delta Airlines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982)[78]). "When an individual proves that he was fired but one outside his class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied against that individual, regardless of the race or sex of the replacement." *Nix*, 738 F.2d at 1186; *see also McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282-84, 96 S. Ct. 2574, 2579-80, 49 L. Ed. 2d 493 (1976) (holding that an employer would violate Title VII if it fired black employees who participated in a theft of cargo while retaining white employees guilty of the same offense).

Plaintiff, as an African American male, is a member of a protected class. Further, a reasonable juror could conclude that plaintiff was qualified to perform his job. The third element requires detailed analysis, however. The court must determine whether plaintiff and Gallant are proper comparators because, "[a]bsent some other similarly situated but differently disciplined worker, there can be no disparate treatment." *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998) (holding that "a Title VII plaintiff cannot succeed in proving that [he] was intentionally discriminated against if [he] does not establish a prima facie case of discrimination").

For two individuals to be deemed similarly situated, the "quality and quantity of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.")).

---

[78] *See supra* note 76.

Thus, plaintiff must show that employees outside his protected class were found guilty of the same or "nearly identical" misconduct, yet were disciplined in different ways. *See Maniccia*, 171 F.3d at 1368-69; *see also, e.g., Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001) ("The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed.").

Taking plaintiff's version of the facts as true, both plaintiff and Gallant chided one another, and they also struck one another, during the May 6, 2001 altercation. Accordingly, plaintiff has established that he and Gallant engaged in nearly identical misconduct, but were disciplined differently.

The burden thus shifts to defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment, but not Gallant's. Defendant denies that Gallant kicked plaintiff, and asserts that the decision to terminate plaintiff's employment was not made by assistant manager Fennell, but by Human Resources Manager Rick Saenz, who did not know plaintiff's race. As noted above, however, there is a fact dispute as to whether Gallant kicked plaintiff. Further, the determination of whether Saenz or Fennell actually made the decision to terminate plaintiff's employment is not particularly meaningful, because Saenz based his decision to terminate plaintiff wholly on information orally related by Fennell. To summarize, the presence of material fact disputes precludes summary judgment as to this portion of plaintiff's race discrimination claim.

### III. CONCLUSION

In accordance with the foregoing, defendant's motion for summary judgment is due to be granted, except as to that portion of plaintiff's race discrimination claim arising from the termination of his employment. Defendant's amended motion for leave to file a reply brief will be denied as

moot. An appropriate order will be entered contemporaneously herewith.

DONE this **21st** day of July, 2003.

_____
United States District Judge